1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   CORY HOCH,                              1:23-cv-00796-KES-SKO

12              Plaintiff,                   **FINDINGS AND RECOMMENDATIONS
                                             TO GRANT DEFENDANTS' MOTION
13        v.                                 FOR SUMMARY JUDGMENT**

14   STEPHANIE CLENDENIN, et al.,            (Doc. 27)

15              Defendants.                  **14-DAY OBJECTION DEADLINE**

16

17

18

19        Plaintiff is a civil detainee proceeding pro se and *in forma pauperis* in a civil rights action

20   pursuant to 42 U.S.C. § 1983. This action proceeds against Defendants Clendenin and Price for

21   violations of Plaintiff's constitutional rights.

22        **I.       BACKGROUND**

23        On September 26, 2024, Defendants filed a motion for summary judgment. (Doc. 27.) The

24   motion included a notice and warning regarding the requirements for opposing the motion. (*Id*. at

25   2-4.)

26        On October 16, 2024, the Court granted Plaintiff's motion seeking an extension of time

27   within which to respond to Defendants' motion. (Doc. 29.) Plaintiff was directed to file his

28

                                              1

opposition "**no later than November 18, 2024.**" (*Id.* at 2, emphasis in original.)

When Plaintiff failed to file an opposition as directed, the Court issued its Order to Show Cause (OSC) in Writing Why Sanctions Should Not Be Imposed for Plaintiff's Failure to File an Opposition to Defendants' Motion for Summary Judgment. (Doc. 30.) Plaintiff was directed to show cause in writing, or, in the alternative, to file an opposition to the pending summary judgment motion, within 14 days. (*Id.* at 3.) Plaintiff failed to respond to the OSC.

Because Plaintiff has failed to file an opposition to Defendants' motion for summary judgment, the Court construes Defendants' motion unopposed and will consider it accordingly.

## II.    SUMMARY OF PLAINTIFF'S CLAIMS

In his first claim for relief, Plaintiff contends Defendants Clendenin and Price violated his rights when they precluded him from vocational job assignments because of his disability, "which was the motivating factor in the discrimination by Defendants," in violation of the Americans with Disabilities Act (ADA). Liberally construed and accepting Plaintiff's factual allegations as true at screening, the Court found Plaintiff plausibly alleged a violation of the ADA as to Defendants Clendenin and Price.

Plaintiff further asserts that Defendants Clendenin and Price violated the equal protection clause of the Fourteenth Amendment. Liberally construed, the Court found Plaintiff plausibly alleged he was a member of an identifiable class as a disabled individual, was treated differently than others similarly situated to him, was not reasonably accommodated, and there was no rational basis for the difference in treatment.

Lastly, Plaintiff contends Defendants Clendenin and Price violated the due process clause. Liberally construed, the Court found Plaintiff plausibly alleged a Fourteenth Amendment due process claim because he alleged restricted access to vocational training and education, an inability to meet discharge planning goals or to enroll in any vocational education courses, and excessive restrictions exceeding their relation to a legitimate government interest.

## III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants contend that Plaintiff lacks standing to bring his vocational job claims and that those claims are not ripe, his claims seeking a vocational education training program are moot, he

1    is not entitled to injunctive relief because he has not suffered irreparable injury, he cannot

2    demonstrate an ADA violation, his equal protection claim fails because he cannot prove he was

3    denied a job assignment or education, and his substantive due process claim fails because Plaintiff

4    is not at substantial risk of suffering serious harm nor has he suffered any injury. (Doc. 27-1.)[1]

5    Plaintiff did not oppose Defendants' motion.

6    **IV.    SUMMARY JUDGMENT STANDARDS**

7    Summary judgment is appropriate when it is demonstrated that there "is no genuine

8    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

9    Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

10   "citing to particular parts of materials in the record, including depositions, documents,

11   electronically stored information, affidavits or declarations, stipulations (including those made for

12   purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R.

13   Civ. P. 56(c)(1)(A).

14   Summary judgment should be entered, after adequate time for discovery and upon motion,

15   against a party who fails to make a showing sufficient to establish the existence of an element

16   essential to that party's case, and on which that party will bear the burden of proof at trial. *See*

17   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an

18   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

19   *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party

20   to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec.*

21   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the

22   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

23   of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

24   and/or admissible discovery material, in support of its contention that the dispute exists or shows

25   that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed.

26

27   _____

[1] Defendants' motion is supported by the declarations of Miriam Vasquez (Doc. 27-3) and Daniel Meek
28   (Doc. 27-4).

R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## V.    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. In 2023, Hoch explored available vocational assignments in anticipation of DSH-Coalinga "opening up fully again" post COVID-19 quarantine "to see if there were any other options beyond voc[ational] laundry at the time."
2. While he made the request in 2023 to explore other vocational positions given his disabilities, he "was okay with the position – the job position I had. But I was just

4

looking at the possibility of other options, if I needed it, down the road, because I knew that this was – my medical condition with my lower back and my neck is a progressive condition. It's progressively getting worse over the – over time. So I knew that – especially with the ongoing pain and numbness and tingling going on, that I might need something different down the road."

3. During 2024, Hoch was assessed by a medical doctor, a physical therapist, and his treatment team for suitability of other vocational positions other than his current one in the laundry.

4. After his assessment, Hoch and his treatment team explored the possibility of additional accommodations which could be provided to aid Hoch in performing his duties in his current position in the laundry.

5. It was determined that the laundry was the best position for him given his medical conditions.

6. Staff also determined at that time that Hoch could work in the patient library, but Hoch did not request to be moved to that position.

7. In fact, Hoch has never had a request for a different vocational position denied.

8. Hoch acknowledges that he is happy with the accommodations that are being provided in his position in the laundry: "I'm good with the accommodations that are given for the job position at this time."

9. Hoch admits that there is no vocational education to which he wishes access but does not currently have access.

10. A vocational assignment and a vocational job training assignment are the same.

11. Patients receive training in the vocational assignment in addition to earning a wage for performing the job.

12. If a patient wishes a vocational assignment, he can either speak with a recreational therapist or his treatment team who will discuss available options, desires, and needs.

13. All patients must be medically cleared for whatever vocational assignment they desire prior to being assigned.

14. DSH-Coalinga makes available the following vocational assignments for patients' voluntary participation for which they are paid a wage: barber shop, computer lab, custodial, furniture, graphic arts, gym crew, landscaping, laundry attendant, library clerk, maintenance, mill/cabinetry, painting crew, patient dining room-custodial, patient dining room-serving, SSC clerk, industrial technician.

15. Each of these vocational assignments require varying degrees of physical abilities.

16. Hoch has held the following vocational positions while housed at DSH-Coalinga: janitorial, library, patient dining room janitorial, and laundry.

17. Hoch has not been denied a vocational job assignment at DSH-Coalinga.

18. Hoch claims that there are only some vocational positions for which patients with disabilities are eligible due to space restrictions.

19. Hoch does not currently desire a different job assignment.

20. Hoch has been evaluated for a different vocational job assignment twice in the last year and a half and, each time, it was his choice to remain in the laundry.

21. Hoch does not wish any accommodations beyond what he is currently receiving to allow him a different vocational job assignment or access to an educational program.

22. Hoch believes he is also qualified to a clerk position in the patient library.

23. Hoch worked previously in the patient library.

24. Unlike state prison inmates, state mental patients are not required to work at an assigned job.

25. Patients voluntarily participate in vocational programs for paid wages.

26. Education classes were eliminated due to "lack of staff and funding."

27. Hoch is 43years old.

28. Hoch graduated from high school.

29. Hoch is a pretrial detainee, not an adjudicated sexually violent predator.

30. DSH-Coalinga offers self-study GED courses and testing for a high school equivalency credential through HiSET.

31. DSH-Coalinga offers college courses through Feather River College.

32. DSH-Coalinga provides a "study hall" where the patients can ask questions on the HiSET or Feather River College materials.

33. Hoch previously participated in college distance learning provided by an outside organization while at DSH-Coalinga, but that school is no longer in existence.

34. Hoch graduated from high school [duplicate of number 28].

35. Hoch completed one year in a technical school taking meteorology.

36. DSH-Coalinga [policies] do not address patient handicaps when considering vocational job assignments or vocational education assignments.

37. Staff members below Defendants Clendenin and Price are responsible for making the decisions regarding vocational job assignments.

(*See* Doc. 27-2 at 1-4 [hereafter "UDF"].)

## VI.    DISCUSSION

### A.  Plaintiff Lacks Standing To Bring Vocational Job Claims

Defendants contend Plaintiff lacks standing to bring his vocational job claims because he has not suffered an injury in fact. (Doc. 27-1 at 12-15.) Defendants assert that any injury to Plaintiff "is non-existent, or, at best, conjectural, hypothetical, and speculative." (*Id*.)

<u>The Applicable Legal Standards</u>

Standing to sue is a necessary component of the Court's subject matter jurisdiction. *Cetacean City. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Accordingly, if a plaintiff lacks standing, the court lacks subject matter jurisdiction. *Id*. To satisfy Article III's standing requirements, a plaintiff must show (1) he has suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that a favorable decision would redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"A plaintiff must demonstrate standing for each claim he or she seeks to press and for each form of relief sought." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "While '[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice,' in responding to a summary judgment motion, 'the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.'" *Id.* (citation omitted).

Analysis

It is undisputed that Plaintiff explored available vocational assignments in 2023 following the COVID-19 quarantine "to see if there were any other options beyond voc[ational] laundry at the time." UDF 1. Plaintiff testified he was "was okay with the position – the job position I had. But I was just looking at the possibility of other options, if I needed it, down the road, because I knew that this was – my medical condition with my lower back and my neck is a progressive condition. It's progressively getting worse over the – over time. So I knew that – especially with the ongoing pain and numbness and tingling going on, that I might need something different down the road." UDF 2. In 2024, Plaintiff was assessed by a medical doctor, a physical therapist, and his treatment team for suitability of other vocational positions other than his current one in the laundry. UDF 3. Plaintiff and his treatment team then explored the possibility of additional accommodations which could be provided to aid Plaintiff in performing the duties of his current position in the laundry. UDF 4. It was ultimately determined that the laundry was the best position for Plaintiff given his medical conditions. UDF 5. And although it was determined that Plaintiff could work in the patient library, Plaintiff did not request a move to that position. UDF 6. Plaintiff has never been denied a request for a different vocational position. UDF 7. Lastly, Plaintiff is happy with the accommodations provided for the laundry position he holds: "I'm good with the accommodations that are given for the job position at this time."[2] UDF 8.

---

[2] Asked whether he was satisfied with his position, Plaintiff testified: "I wouldn't say I'm satisfied. I mean, I'm good with the accommodations that are given for the job position at this time; however, like I said previously because of the ongoing progression of this - - these conditions I may not be able to stay much longer in that position as it stands, even with the accommodations that are already provided."

The undisputed facts reveal that Plaintiff did not suffer actual injury. UDF 1-8. In 2023, Plaintiff worked in the laundry and was happy in his position. Plaintiff explored other opportunities, but following assessment and a determination by his treatment team, the laundry position and a position in the patient library were identified as the best positions for Plaintiff. Plaintiff was already working in the laundry, did not want to work in the patient library, and was pleased with the accommodations provided for in the laundry position he held. Therefore, the evidence shows that Plaintiff suffered no concrete and particularized injury, nor was any injury imminent. *Friends of the Earth, Inc.*, 528 U.S. at 180-81; *Washington Env't Council*, 732 F.3d at 1139. At best, any injury is speculative and therefore insufficient. *Id.*; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[T]hreatened injury must be 'certainly impending' to constitute injury in fact," and "'[a]llegations of possible future injury' are not sufficient").

Defendants have met their initial burden of establishing that Plaintiff does not have standing to assert any vocational job claims because he did not suffer an "injury in fact." *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322. Plaintiff has failed to meet his burden of production to establish that a genuine dispute of material fact as to this issue exists. *See Matsushita Elec. Indus. Co*., 475 U.S. at 586. Thus, Defendants are entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

**B.  The Vocational Job Claims Are Not Ripe**

Defendants contend that even if Plaintiff had standing, he has not demonstrated his vocational job claims are ripe. (Doc. 27-1 at 16-17.) Because Plaintiff cannot show an actual or imminent injury, Defendants maintain "this dispute is more an abstraction than an actual case because the supposed injury has not materialized and may never materialize." (*Id*. at 17.)

The Applicable Legal Standards

Standing and ripeness are "related doctrines of justiciability ... originating in the case-or-controversy requirement of Article III ...." *Trump v. New York*, 592 U.S. 125, 131 (2020). A case is constitutionally "ripe" if it is "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id*., quoting *Texas v. United States*, 523 U.S. 296,

1    300 (1998); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)

2    ("standing and ripeness [may] boil down to the same question ..."). Standing is concerned with

3    who is a proper party to litigate a particular matter, whereas ripeness concerns when the litigation

4    may occur. *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009).

5                                  <u>Analysis</u>

6            As noted above, the evidence presented reveals Plaintiff has not suffered an actual injury.

7    UDF 1-8. Therefore, Plaintiff's vocational claims are not ripe for adjudication because any harm

8    is contingent on future events that may not occur as anticipated or at all. *Trump*, 592 U.S. at 131;

9    *Colwell*, 558 F.3d at 1123. Simply put, Plaintiff faces no imminent injury.

10           Defendants have met their initial burden of establishing that Plaintiff's vocational claims

11    are not ripe. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322. Plaintiff has failed

12    to meet his burden of establishing that a genuine dispute of material fact as to this issue exists.

13    *See Matsushita Elec. Indus. Co*., 475 U.S. at 586. Thus, Defendants are entitled to summary

14    judgment. *Id.* at 587; *Celotex Corp.*, at 322.

15

16        **C.  Plaintiff's Claims Seeking A Vocational Education Training Program Are
             Moot**

17           Defendants next contend Plaintiff's claims concerning a vocational education training

18    program are moot due to Plaintiff's "change of heart." (Doc. 27-1 at 17-18.)

19                            <u>The Applicable Legal Standards</u>

20           The doctrine of mootness derives from the case or controversy requirement in Article III

21    of United States Constitution, and "requires that an actual, ongoing controversy exist at all stages

22    of federal court proceedings." *Bayer v. Neiman Marcus Group, Inc*., 861 F.3d 853, 862 (9th Cir.

23    2017). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a

24    legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013);

25    *see also Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001). "Mootness turns on the

26    ability of the district court to award effective relief," which means that any analysis of mootness

27    must consider the remedies available to the plaintiff. *Bayer*, 861 F.3d at 862. "A case, or an issue

28

                                            9

1   in a case, is considered moot if it has lost its character as a present, live controversy of the kind

2   that must exist if we are to avoid advisory opinions on abstract propositions of law." *Lindquist v.*

3   *Idaho State Bd. of Corr.*, 776 F.2d 851, 853-54 (9th Cir. 1985) (quotations & citations omitted).

4                                              Analysis

5           During his deposition, Plaintiff testified that that there is no vocational education program

6   in which he wishes to participate but to which he does not currently have access. UDF 9. The

7   Court finds Plaintiff's claim is moot because it is no longer a live controversy. *Already, LLC*, 568

8   U.S. at 91; *Bayer*, 861 F.3d at 862. Nor can the Court award effective relief where Plaintiff has

9   indicated there exists no vocational education program that he wishes to join but has been refused

10  admittance to. *Bayer*, at 862; *Lindquist*, 776 F.2d at 853-54.

11          Defendants have met their initial burden of establishing that Plaintiff's claim regarding a

12  vocational education are moot. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322.

13  Plaintiff has failed to meet his burden of production to establish that a genuine dispute of material

14  fact as to this issue exists. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Thus, Defendants are

15  entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

16          **D.  Plaintiff Is Not Entitled To Injunctive Relief**

17          Defendants contend that Plaintiff is not entitled to permanent injunctive relief because he

18  has not suffered irreparable injury. (Doc. 27-1 at 19-20.)

19                                  The Applicable Legal Standards

20          Injunctive relief is an "extraordinary remedy, never awarded as of right." *Winter v.*

21  *Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "Under 'well-established principles of

22  equity,' a plaintiff seeking permanent injunctive relief must satisfy a four-factor test by showing:

23  (1) that plaintiff has suffered an irreparable injury; (2) that remedies available at law, such as

24  monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance

25  of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

26  public interest would not be disserved by a permanent injunction." *Cottonwood Envtl. Law Ctr. v.*

27  *U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015) (citing *eBay Inc. v. MercExchange, L.L.C.*,

28  547 U.S. 388, 391 (2006)).

1

### Background

2      Plaintiff's complaint is a form complaint (Doc. 1 at 1-6) and a separate typed document

3  titled "Civil Rights Complaint (Injunctive Relief) 42 U.S.C. § 1983" (*id*. at 7-17). In the form

4  portion, Plaintiff sought the following relief: "Plaintiff seeks injunctive relief ordering defendants

5  to provide plaintiff access to vocational jobs within the limits of his disability and include him in

6  a vocational education program." (*Id*. at 6.) In the separate typed portion, Plaintiff requests the

7  following relief:

8              Order Defendants Clendenin and Price to provide Plaintiff with
             access to vocational job program at DSH-Coalinga that will allow
9            him reasonable accessibility of participation based on within the
             limits of Plaintiffs disability, and which he can implement as part
10           of his discharge planning and treatments goals;

11             Order Defendants Clendenin and Price to provide Plaintiff with
             access to the facilities programs and services which include
12           vocational education training in a program, fully staffed by
             licensed or otherwise credentialed staff, that accommodates
13           Plaintiff reasonably and based on the limitations of Plaintiffs
             disability, which he can implement as part of his discharge
14           planning and treatment goals;

15  (*Id*. at 17.)

16

### Analysis

17      As noted above, during his deposition, Plaintiff testified there is no vocational education

18  program in which he wishes to participate to which he does not currently have access. UDF 9.

19  Additionally, the evidence indicates that DSH-Coalinga offers college courses through Feather

20  River College and provides a "study hall" where the patients can ask questions on Feather River

21  College materials. *See* UDF 31-32. The evidence establishes that Plaintiff has not been harmed,

22  *Cottonwood Envtl. Law Ctr.*, 789 F.3d at 1088, and any possible harm to Plaintiff is purely

23  speculative, *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative

24  injury cannot be the basis for the finding of irreparable harm"). Therefore, Plaintiff cannot show

25  he suffered an irreparable injury.

26      Defendants have met their initial burden of establishing that Plaintiff is not entitled to

27  injunctive relief. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322. Plaintiff has

28  failed to meet his burden of production to establish that a genuine dispute of material fact as to

this issue exists. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Thus, Defendants are entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

### E. Plaintiff Cannot Demonstrate An ADA Claim

Next, Defendants contend Plaintiff's ADA claim fails because he cannot prove that his exclusion from a different job assignment or education program was by reason of his disability. (Doc. 27-1 at 20-24.)

<u>The Applicable Legal Standard</u>

To state a claim under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo County, Ariz*, 609 F.3d 1011, 1021 (9th Cir. 2010).

<u>Relevant Background</u>

In its First Screening Order, the Court found Plaintiff plausibly stated a claim by alleging he is an individual with mobility and visual disabilities, is qualified to participate in or receive the benefit of DSH-Coalinga's services, programs, or activities, was denied benefits in the form of a refusal of reasonable accommodation regarding vocational job assignments, was denied participation in vocational education programs because those programs are no longer offered, and that the exclusion and denial of benefits was discriminatory by reason of his disability. (*See* Doc. 9 at 10.)

<u>Analysis</u>

The Court considers whether any exclusion, denial of benefits or discrimination to Plaintiff occurred due to his disability. The uncontested evidence demonstrates that Plaintiff was not denied a vocational job assignment. UDF 17. The evidence also establishes that some, but not all, vocational jobs are available to disabled patients. UDF 18. And that patients are not required to work an assigned job while civilly detained. UDF 24-25. Plaintiff also testified at his deposition that he does not want a different vocational job assignment; he wishes to remain

assigned to the laundry despite evaluations that also identified the patient library as an available position. UDF 19, 20. Plaintiff also testified he does not want any further accommodations that would allow him another vocational job assignment or access to an educational program. UDF 21. Plaintiff testified that educational programs were eliminated due to a lack of funding and staff. UDF 26. And the college courses in which Plaintiff previously participated are no longer offered because the organization no longer exists. UDF 33. There is no evidence to indicate Plaintiff was denied the benefit of a vocational job assignment due to his disability, nor is there any evidence to indicate Plaintiff was denied access to an educational program as the result of his disability.

Defendants contend also that DSH-Coalinga has no duty to provide Plaintiff with an education because he has no constitutional right to one, citing the California Constitution and section 48200 of the California Education Code. As to the latter, the statute provides that persons "between the ages of 6 and 18" are "subject to compulsory full-time education." Plaintiff is 43 years old and graduated high school. UDF 27-28. Further, Defendants contend Plaintiff does not qualify for educational services under the Individuals with Disabilities Education Act[3] as those federal monies are appropriated for the education of disabled children between the ages of 3 and 21. UDF 27.

During Plaintiff's deposition, the following colloquy occurred:

> Q.  Do you believe that either Defendant Clendenin or Defendant Price intentionally discriminated against you based upon your disability?
>
> A.  Not them individually; however, the policies that are in place, or least were in place at the time of the complaint, were handed down by Clendenin and Mr. Price. So in their official capacity, yes.
>
> Q.  And what policies are those?
>
> A.  I don't know the numbers or anything. It's just a basic vocational manual of some sort. I don't remember the title of it.
>
> …
>
> Q.  And you said that at least the policies that were in effect at the time you filed the complaint. Are the - - are the policies of which

---

[3] 20 U.S.C. § 1400, *et seq.*

1    you're complaining, have they changed since you filed your complaint?

2

3    A.  I don't know if the policies themselves have, but the practice that was in place at the time changed where now they're allowing more ADA-accessible individuals into the patient library as the facility has found that there's - - that's really the only place right now that they can provide the accommodations.

4

5

6    Q.  So, whereas, when you filed your complaint … patients with disabilities weren't allowed to work in the library, now they are. Is that correct?

7

8    A.  I don't know if they were or not, originally, I don't recall ever seeing anybody with wheelchairs or walkers working in the library - -

9    Q.  Okay.

10   A.  - - for as long as I can remember.

11   Q.  And now they are?

12   A.  Yes.

13   Q.  Is that the only policy of which you complained of that Defendant Clendenin and Price enacted that was discriminatory to your disabilities?

14

15   A.  I'm trying to remember what my original petition said. …

16   Q.  As you sit here today, are there any policies of which you are aware that Defendants Clendenin and Price enacted that discriminate - - that you allege discriminated against you based upon your disabilities?

17

18

19   A.  At this time? Well, as far as - - yes. As far as I'm aware, the policy hasn't actually changed itself, just the practice. I don't believe the policy has actually changed.

20

21   Q.  And as you sit here today, you don't know what specific policy that is, whether it be an administrative directive or anything like that?

22

23   A.  No. Not offhand. … Now I know that there is a central program services policy that deals with vocational assignments. I'm trying to remember. I believe it's - - there's two of them, policy number 200 and 201. But then there's also an actual vocational guide or manual of some sort, and I - - I don't remember the title of that. And it's not - - not an actual policy number on that one, but the policies I do have access to, 200 and 201, as far as I'm aware, they have not changed.

24

25

26

27   Q.  And what did those policy documents 200 and 201 - - what did they speak to? What was discriminatory about them?

28   A.  Well, it's not - - they don't define the accessibility of job positions

14

1      for handicapped at all. So, ultimately, the practice was that they
would accommodate them in the laundry as best as they were able to
2      with limited positions in just that one area. [¶] Whereas, able-bodied
people could basically go anywhere throughout the open part of the
3      hospital, whether it be hallways - - cleaning hallways, janitorial, the
patient dining rooms. They have mill and cabinet where they make
4      woodwork. They have graphic arts where they create forms and stuff
like that, all sorts of other things. But there was no extra positions or
5      open positions for the handicapped.

6      Q. And now that practice has changed?

7      A. Well, like I said before, they now have positions or are making
positions available in the patient library.
8

9      Q. In any other vocational job assignments do you know of that they
are placing patients with disabilities?

10     A. No.

11     Q. Do you believe that the - - because the policies themselves do not
speak about patients with disabilities in vocational assignments, do
12     you believe that that is discriminatory?

13     A. Yes, because it doesn't outline or even say at all that they are to
be treated equally as an able-bodied person - - have the position as if
14     they are an able-bodied person, that kind of thing.

15     Q. The policies themselves do not specifically state that disabled
individuals cannot have certain job assignments. Correct?
16

17     A. Okay. If I'm understanding you correctly, you're asking that the
policies themselves do not state exactly that handicapped individuals
       can have a job or not have a job?
18

19     Q. Cannot have particular jobs.

20     A. It doesn't say anything at all regarding handicapped individuals.

21     …

22     Q. The policies themselves don't address handicaps for any patients
in discussing job - - vocational job assignments or vocational
       education assignments?
23

24     A. Correct.

     (Hoch Depo., at 84-89.)
25

26           As noted above, Plaintiff testified neither Clendenin nor Price personally intentionally

27    discriminated against him based on his disability. Second, to the extent Plaintiff testified about

28    vague policies—numbers 200 and 201 from an otherwise unidentified policy— purportedly

1   enacted by Clendenin and Price that discriminates against disabled individuals because those

2   policies do not address vocational assignments for disabled patients, that testimony does not

3   amount to evidence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586

4   n.11. Plaintiff may not simply rely upon the allegations in his complaint. He must offer evidence

5   in the form of affidavits, and/or admissible discovery material, in support of his contention that a

6   policy implemented by Defendants violates his ADA rights but has failed to do so. *See* Fed. R.

7   Civ. P. 56(c); *Id.* Plaintiff's deposition testimony amounts to nothing more than "some

8   metaphysical doubt as to the material facts" because the record as a whole would not lead a

9   rational trier of fact to find for Plaintiff on this issue. *Matsushita,* at 587.

10       In sum, Defendants have met their initial burden of establishing that Plaintiff is not

11   entitled to injunctive relief. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322.

12   Plaintiff has failed to meet his burden of production to establish that a genuine dispute of material

13   fact exists for a required element of his ADA claim. *See Matsushita Elec. Indus. Co*., 475 U.S. at

14   586. Thus, Defendants are entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

### F.  Plaintiff Cannot Prove An Equal Protection Violation

16       Defendants contend Plaintiff's equal protection violation fails because Plaintiff cannot

17   prove he was denied a job assignment or education based on his disabilities. (Doc. 27-1 at 24-26.)

18                        <u>The Applicable Legal Standards</u>

19       The Equal Protection Clause requires that persons who are similarly situated be treated

20   alike. *City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985); *Hartmann v.*

21   *California Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013). Civil detainees are

22   protected under the Equal Protection Clause of the Fourteenth Amendment from invidious

23   discrimination based on race, religion, or membership in a protected class, subject to restrictions

24   and limitations necessitated by legitimate penological interests. *See Bell v. Wolfish*, 441 U.S. 520,

25   545-46 (1979).

26       To state a claim, a plaintiff must show that defendants intentionally discriminated against

27   him based on his membership in a protected class. *Hartmann*, 707 F.3d at 1123. If the action does

28   not involve a suspect classification, a plaintiff may establish an equal protection claim by

showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008).

> To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S.562, 564 (2000). To establish a violation of the Equal Protection Clause, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976).

<u>Background</u>

In its First Screening Order, the Court found Plaintiff plausibly alleged he is a member of an identifiable class as a disabled individual, he was treated differently than others similarly situated because, as a civil detainee, Plaintiff has been denied vocational jobs available to other civil detainees, and was not reasonably accommodated to participate in vocational jobs given to other civil detainees, and finally, that that there is no rational basis for the difference in treatment Plaintiff experienced. (Doc. 9 at 12.)

<u>Analysis</u>

As noted above, Plaintiff is required to present evidence of discriminatory intent. *See Washington*, 426 at 239-240. He has failed to do so. Regarding vocational job assignments, there is no evidence of discriminatory intent by Clendenin or Price. Plaintiff has not been denied a vocational job assignment at DSH-Coalinga. UDF 17. And as quoted above, neither Defendant personally intentionally discriminated against Plaintiff on the basis of his disability. The vocational job assignments available at DSH-Coalinga involve varying degrees of physical ability; Plaintiff presently qualifies for two of those on offer—in the laundry and patient library— following an evaluation by his treatment team, and he has previously worked as a janitor, in the patient dining room and patient library, and presently works in the laundry. UDF 12-16. While Plaintiff claims only some vocational job assignments are available to disabled patients, he also

testified that was the result of space restrictions. UDF 18. Lastly, Plaintiff testified he wishes to remain in his laundry job assignment. UDF 19, 20. Similarly, regarding educational programming, Plaintiff testified neither Clendenin nor Price intentionally discriminated against him. UDF 17. He also testified that educational offerings were eliminated at DSH-Coalinga based on a lack of funding and staff. UDF 26.

In sum, Defendants have met their initial burden of establishing that Plaintiff cannot prove an equal protection violation. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322. Plaintiff has failed to meet his burden of production to establish that a genuine dispute of material fact exists concerning a required element of his equal protection claim. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Thus, Defendants are entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

### G.  Plaintiff Cannot Prove A Due Process Violation

Finally, Defendants contend that Plaintiff's substantive due process claim fails because Plaintiff is not at substantial risk of suffering serious harm, nor has he suffered any injury. (Doc. 27-1 at 26-28.)

### The Applicable Legal Standards

The elements of a Fourteenth Amendment due process claim are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose condition of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). The Due Process Clause of the Fourteenth Amendment prohibits subjecting civil detainees to conditions that amount to

punishment. *See Jones v. Blanas*, 393 F.3d 918, 931-32 (9th Cir. 2004).

*Youngberg* "created a standard whereby whether a hospital administrator has violated a patient's constitutional rights is determined by whether the administrator's conduct diverged from that of a reasonable professional." *Ammons v. Washington Dep't of Social and Health Services*, 648 F.3d 1020, 1027 (9th Cir. 2011). Courts generally refer to this standard as the "*Youngberg* professional judgment standard." *Id*. Importantly, "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Youngberg*, 457 U.S. at 321 (internal quotation marks omitted).

There is no constitutional violation if the restrictions "are an incident of some other legitimate government purpose." *Simmons v. Sacramento Cty. Superior Court*, 318 F.3d 1156, 1160 (9th Cir. 2003). "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a 'least restrictive alternative.'" *Valdez v. Rosenbalm*, 302 F.3d 1039, 1046 (9th Cir. 2002) (citations omitted). The only question is whether the defendants might reasonably have thought that the policy would advance its interests. *Id*. The Ninth Circuit has held that "punitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless 'excessive in relation to the alternative purpose,' or 'are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods[.]'" *Jones*, 393 F.3d at 932 (citations omitted).

<u>Background</u>

At screening, where Plaintiff's allegations are liberally construed and his factual allegations are accepted as true, the Court found he plausibly alleged a due process claim by asserting Defendants restricted his access to vocational training and education, affecting his ability to realistically attain training and education that allow for rehabilitation and safe entry into the community. Plaintiff contended his inability to enroll in vocational education courses was more onerous than any restriction imposed on his criminal inmate counterparts. Plaintiff also alleged that the restrictions imposed were excessive in relation to a legitimate government interest

1    of treatment and rehabilitation, and that other state hospital facilities continued to offer vocational

2    training and educational opportunities.

3                                              Analysis

4          As previously discussed, the evidence establishes that Plaintiff has no constitutional right

5    to either a vocational job assignment or an education while detained at DSH-Coalinga.  The

6    evidence also establishes that officials at DSH-Coalinga, in the form of Plaintiff's treatment team,

7    assessed Plaintiff on more than one occasion concerning his vocational job assignment, Plaintiff

8    has never been denied a vocational job assignment, and is presently assigned a position in the

9    laundry that he does not wish to change. UDF 1-8, 19-20. The evidence also establishes that

10   should Plaintiff wish to further his education, such an opportunity is available at DSH-Coalinga

11   through a distance learning program at Feather River College. UDF 31-32.

12         Even assuming Defendants imposed restrictions to Plaintiff's access to vocational

13   assignments and educational opportunities based on a lack of funding and staff, Plaintiff has

14   offered no evidence to indicate those bases are not legitimate governmental interests. *Simmons,*

15   318 F.3d at 1160. This Court finds that any restriction or limitation concerning vocational job

16   assignments and educational opportunity resulting from a lack of funding and staff serve an

17   alternative, non-punitive purpose. *Jones*, 393 F.3d at 932. It further finds a lack of funding and

18   staff are bases upon which Clendenin and Price could have reasonably concluded that any

19   limitation or restriction on vocational assignments and education would advance DSH-Coalinga's

20   interests. *Valdez*, 302 F.3d at 1046.

21         There is no evidence of a substantial risk of serious harm to Plaintiff or any evidence of

22   actual injury. *Castro*, 833 F.3d at 1071. Thus, Defendants have met their initial burden of

23   establishing that Plaintiff cannot prove a due process violation. *See* Fed. R. Civ. P. 56(c)(1)(A);

24   *Celotex Corp.*, 477 U.S. at 322. Plaintiff has failed to meet his burden of production to establish

25   that a genuine dispute of material fact exists as to a required element of his due process claim. *See*

26   *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Thus, Defendants are entitled to summary

27   judgment. *Id.* at 587; *Celotex Corp.*, at 322.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.    CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this Court **RECOMMENDS** Defendants' motion for summary judgment (Doc. 27) be **GRANTED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **February 19, 2025**                    */s/ Sheila K. Oberto*

                                                       UNITED STATES MAGISTRATE JUDGE